IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ATO SMITH,<br><br>          Plaintiff,<br><br>     vs.<br><br>AMAZON.COM SERVICES, LLC,<br><br>          Defendant. | Civil No. 26-00089 MWJS-WRP<br><br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT AND GRANTING FURTHER LIMITED LEAVE TO AMEND |

**INTRODUCTION**

Plaintiff Ato Smith filed this action against his former employer, Amazon.com Services, LLC ("Amazon"), alleging that it discriminated against him on account of his race and disabilities, failed to accommodate those disabilities, and retaliated against him for engaging in protected activity.  On March 13, 2026, the court screened Smith's original complaint, granted his application to proceed in forma pauperis based on his inability to afford the costs associated with maintaining this action, and dismissed the complaint with leave to amend.  Dkt. No. 5.  The court identified specific deficiencies in Smith's claims of disability-based discrimination under the Americans with Disabilities Act ("ADA") and race-based discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and explained what additional facts he would need to allege to state a plausible claim.  *Id*. at PageID.17-21.

On March 31, 2026, Smith timely filed a First Amended Complaint ("FAC").  Dkt. No. 7.  The FAC proceeds solely under the ADA, dropping the Title VII claims.  *Id.* at PageID.25.  Having again screened the complaint under 28 U.S.C. § 1915(e)(2), the court concludes that Smith's ADA disability discrimination and failure-to-accommodate claims remain insufficient.  And while the FAC adds new allegations in support of an ADA retaliation theory, these allegations, too, are not sufficient to state a plausible claim.  For these reasons, the FAC is DISMISSED.  Nonetheless, to ensure that Smith had had a full opportunity to address the identified deficiencies, the court DISMISSES these claims but GRANTS Smith further leave to amend to correct his claims of ADA disability discrimination and failure-to-accommodate, and leave to amend his ADA retaliation theory.

As explained more fully below, if Smith chooses to file a new complaint, he must address the identified deficiencies in the claims advanced in the FAC.  Smith is not authorized to add any new defendants or any new claims.

### DISCUSSION

The court is no less obligated to screen the FAC than it was the initial complaint.  *See* 28 U.S.C. § 1915(e)(2).  And as the court explained in its prior order, the screening standard mirrors Federal Rule of Civil Procedure 12(b)(6).  Dkt No. 5, at PageID.14; *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Smith's FAC must therefore include "sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Recognizing that Smith is proceeding without representation, the court continues to liberally construe his pleadings and to resolve all doubts in his favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010).

### A. The FAC

Smith's FAC provides additional factual context for his allegations. He states that his ADHD and dyslexia "substantially limit" his ability to concentrate, read, process information, and learn new tasks. Dkt. No. 7, at PageID.26. Starting in June 2025, when he began orientation for his role as a Flex Associate at Amazon's Honolulu delivery warehouse, he disclosed his disabilities and requested assistance. But after he experienced issues using the company's scanner system, Amazon separated him from the training class, instructed him to sit in the break room, and placed him into an assignment without adequate training or support. *Id.* at PageID.25. He had "previously been recognized within Amazon's system as having ADHD and had received approval from an Amazon healthcare provider at another location," but at the new facility, the accommodation he had previously received was not honored. *Id.*

The FAC also provides more background about the complaint Smith filed with the Equal Employment Opportunity Commission ("EEOC") on July 22, regarding Amazon's failure to honor his accommodation and changes it made to his employment

conditions and benefits. *Id.* On August 5, he states he again applied for a reasonable accommodation. *Id.* Shortly after that, around August 16, while working with a scanner, Smith informed his manager, Levi, that he was experiencing distress related to his ADHD and requested to be removed from that assignment. But that request was denied. Levi informed Smith that his accommodation was not reflected in the system, which led Smith to "feel uncomfortable and pressured to continue working despite [his] condition." *Id*. at PageID.26. Before leaving his shift, Smith reported Levi's conduct to Human Resources and to a regional manager. *Id*. Within approximately two weeks of that interaction, Smith was suspended for allegedly violating a policy, but was not told what policy he had violated and received no prior written warning. *Id.*

The FAC asserts three claims under the ADA: disability discrimination (which the FAC refers to as "Count 1"), failure to accommodate ("Count 2"), and retaliation ("Count 3"). *Id.* For the reasons that follow, the FAC does not adequately allege any of these claims.

### 1. ADA Disability Discrimination (Count 1)

As the court explained in its prior order, to establish a prima facie case of employment discrimination under the ADA, a plaintiff must show: "(1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001); Dkt. No. 5, at

4

PageID16.  And as the court previously explained, a "qualified individual with a disability is defined as an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013); Dkt. No. 5, at PageID.17.

The FAC addresses one of the deficiencies the court previously identified.  *See* Dkt. No. 5 at PageID.19.  Where the original complaint did not explain how Smith's conditions substantially limit any major life activity, Smith now alleges that his ADHD and dyslexia substantially limit major life activities including concentrating, reading, processing information, and learning new tasks.  Dkt. No. 7, at PageID.26.  The remaining two elements of his disability discrimination claim, however, remain inadequately pled.

As to the second element, Smith does not allege facts establishing that he was a "qualified individual"—that is, that he was able to perform the essential functions of his position with or without reasonable accommodation.  *See* 42 U.S.C. § 12111(8); *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).  The FAC describes his duties as "sorting packages, staging deliveries, loading and unloading items, and assisting with general warehouse operations," and states that during orientation he disclosed his ADHD and dyslexia and that he "learn[s] differently and may require additional support during training."  Dkt. No. 7, at PageID.25.  But Smith does not identify what specific accommodation would have enabled him to perform those duties, or how any

such accommodation would have addressed his particular limitations.  A general request for more support during training does not answer that question.

As to the third element, Smith must allege facts demonstrating that Amazon took an adverse employment action because of his disability.  *See Hutton*, 273 F.3d at 891.  As the court noted in its prior order, "Smith pleads no facts connecting those actions to his alleged disabilities."  Dkt. No. 5 at PageID.20.  And the FAC does not cure that deficiency.  Smith's allegation that "[b]efore leaving, [he] reported Levi's behavior to Human Resources and a regional manager, explaining that his conduct made [him] feel uncomfortable and pressured to work despite [his] medical condition," and that within approximately two weeks he "was suspended for allegedly violating a policy," Dkt. No. 7, at PageID.25–26, does not link the suspension to his disability.  Those allegations describe conduct that bears on whether he was penalized for complaining about his manager's conduct—a retaliation theory the court addresses separately below—not whether any adverse action was taken because of his disability itself.

For these reasons, the court DISMISSES Smith's claim of disability discrimination.

### 2.    Failure to Accommodate (Count 2)

Smith's failure-to-accommodate claim is premised on the theory that Amazon was aware of his disabilities but failed to provide the modifications necessary to enable

6

him to perform his job.  Dkt. No. 7, at PageID.26.  The claim fails because Smith has not pled sufficient facts to support it.

The ADA "defines discrimination to include an employer's failure to make [a] reasonable accommodation," *Mendoza v. The Roman Catholic Archbishop of Los Angeles*, 824 F.3d 1148, 1150 (9th Cir. 2016).  But it treats a failure-to-accommodate claim under the ADA as "analytically distinct from a claim of disparate treatment or impact." *Johnson v. Bd. of Trustees of Boundary Cty. Sch. Dist.*, 666 F.3d 561, 567 (9th Cir. 2011). Where a discrimination claim asks whether an employer acted against an employee because of their disability, a failure-to-accommodate claim asks whether the employer failed to provide the modifications or adjustments that would have enabled the employee to perform her essential job functions.  *See Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 798 (9th Cir. 2017).

A reasonable accommodation may include modifications to equipment, adjustments to procedures, or other individualized changes suited to an employee's particular limitations.  42 U.S.C. § 12111(9).  Whether a particular accommodation is reasonable requires a fact-specific, individualized analysis of the disabled employee's circumstances.  *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010).  Once an employer becomes aware of the need for accommodation, it has an obligation under the ADA to engage in an interactive process with the employee to identify and implement

7

an appropriate accommodation.  *See Dunlap*, 878 at 799; *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

Smith identifies his duties as "sorting packages, staging deliveries, loading and unloading items, and assisting with general warehouse operations" and states that he disclosed his ADHD and dyslexia during orientation and that he "learn[s] differently and may require additional support during training."  Dkt. No. 7, at PageID.25.  He further alleges that "[i]nstead of providing proper assistance or accommodation, [he] was removed from the training class and directed to sit in the break room," and that he "was told to rely on another employee for help, but that employee was performing his own duties and was unable to properly train or guide [him]."  *Id.*  These allegations, however, do not establish that Smith could perform the essential functions of a warehouse associate with a reasonable accommodation.  Whether the failure to support Smith during orientation was attributable to his disability or to scanner access problems and inadequate training is unclear from the FAC.  And Smith does not identify what specific accommodation would have enabled him to perform duties his position required—sorting, staging, loading, and unloading—or how such an accommodation would have addressed his particular limitations.  A general request for "additional support during training" does not answer that question.  Instead, what Smith describes in the FAC is a failure to provide adequate training, not a failure to accommodate his disability.  He alleges that he was placed back into a scanner-dependent position

8

without having been trained on the scanner, and that he was told to rely on a coworker who "was performing his own duties and was unable to properly train or guide" him, which left him without "the same level of training as other employees." *Id.* That describes a shortcoming in onboarding, not the failure to provide a disability-specific modification or adjustment directed at his ADHD or dyslexia.

To be sure, the FAC's narrative section provides more detail than the original complaint: it describes Smith disclosing his disabilities during orientation, being told to rely on another employee for training, and having a prior accommodation approval go unrecognized at his new facility. Dkt. No. 7, at PageID.25. But the claim itself, as stated in the counts section, is conclusory: "Defendant failed to engage in an interactive process and denied reasonable accommodation." *Id.* at PageID.26. Even crediting the facts in Smith's narrative, he does not plausibly allege what specific accommodation he formally requested, or how the employer failed to engage in a good faith interactive process. Without these factual allegations, the claim does not rise above the "threadbare recital" of elements that *Iqbal* deems insufficient. 556 U.S. at 678.

Accordingly, the court DISMISSES Smith's failure-to-accommodate claim.

### 3.    Retaliation (Count 3)

The ADA prohibits retaliation against any individual who has "opposed any act or practice made unlawful by" the ADA or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the

ADA. 42 U.S.C. § 12203(a).  Courts in the Ninth Circuit analyze ADA retaliation claims under the same framework applicable to Title VII retaliation claims.  *Brown v. City of Tucson*, 336 F.3d 1181, 1186 (9th Cir. 2003).  To state a prima facie case of retaliation, a plaintiff must plausibly allege: (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action.  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *See also Jarvis v. Corteva Agriscience, Inc.*, Civ. No. 23-00396, 2025 WL 1312119, at *7 (D. Haw. May 6, 2025).

The FAC's retaliation allegations represent meaningful progress over the original complaint, which offered no factual support for such a theory.  Smith now alleges that he reported his manager Levi's conduct to Human Resources and to a regional manager—explaining that Levi pressured him to work despite his medical condition— and that within approximately two weeks of that report, he was suspended for an unspecified policy violation, without a prior written warning or explanation of what policy he had violated.  Dkt. No. 7, at PageID.25–26.  These allegations gesture toward a plausible retaliation claim.  Reporting a manager's conduct that interferes with a disability accommodation could plausibly constitute "opposing" a practice made unlawful by the ADA, and a suspension could plausibly qualify as an adverse employment action.

Nevertheless, these allegations are not yet sufficient to state a plausible claim, primarily because they lack the factual detail necessary to plausibly allege causation. As the court observed in its prior order, "[e]ssential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Jarvis*, 2025 WL 1312119, at *7 (quoting *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)). And while temporal proximity between protected activity and an adverse employment action can sometimes support an inference of retaliation, *see Jarvis*, 2025 WL 1312119, at *7–10, it cannot carry that weight here. Smith alleges that he reported Levi's conduct to HR and a regional manager on August 16 and was suspended approximately two weeks later. But he does not identify who made the decision to suspend him, and he does not allege that the decisionmaker was aware of his HR report at the time of the suspension. Without those allegations, temporal proximity alone cannot establish the causal link that a retaliation claim requires. And so Count 3 is DISMISSED.

### B.     The Court Grants Further Limited Leave to Amend

The court has dismissed each of the FAC's counts because each suffers from factual shortcomings. But Smith could "conceivably cure these deficiencies." *Jones v. Rising Phoenix Holdings Corp.*, Civ. No. 25-00178, 2025 WL 2802180, at *9 (D. Haw. Oct. 1, 2025). That is most obvious for the retaliation theory, which is being advanced with meaningful factual context here for the first time. Here there is the strongest possibility

11

that, having now received this court's legal guidance, Smith will be able to flesh out the factual particularities that will suffice to state this retaliation claim.

It is a closer call for Smith's discrimination and accommodation claims, which have been twice pled without sufficient factual support, and which Smith already received the court's guidance in the prior order. Nonetheless, the court recognizes that Smith's alleged disabilities may well impede his ability to adequately respond to the court's orders. For that reason, and out of an abundance of caution, the court will also grant Smith further leave to amend the discrimination and accommodation claims.

Accordingly, the court grants FURTHER LIMITED LEAVE TO AMEND. Smith may add factual allegations to Count 1, Count 2, and Count 3 to address the deficiencies identified in this order. But he is not authorized to add any additional defendants or additional claims.

**<u>CONCLUSION</u>**

For the foregoing reasons, the court DISMISSES Smith's FAC, Dkt. No. 7, and grants further limited leave to amend.

If Smith elects to file a second amended complaint, he must comply with the following requirements:

(1) Smith's deadline to file a second amended complaint is June 4, 2026;

(2) Smith's amended complaint should be titled "Second Amended Complaint;"

12

(3) Smith may assert only the same Count 1, Count 2, and Count 3 as appeared in

the FAC, and only against the same Defendant named in the FAC; he may not

add any new claims or any new defendants; and

(4) Smith's amended complaint must cure the deficiencies identified above.

Smith is cautioned that failure to timely file a second amended complaint that complies

with this order will result in automatic dismissal of this action.

IT IS SO ORDERED.

DATED:        May 4, 2026, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 26-00089 MWJS-WRP; *Smith v. Amazon.com Services, LLC*; ORDER
DISMISSING FIRST AMENDED COMPLAINT AND GRANTING FURTHER LIMITED
LEAVE TO AMEND